People v Oldorff

2026 NY Slip Op 02004

April 2, 2026

Appellate Division, Third Department

Reynolds Fitzgerald, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This decision is uncorrected and subject to revision before publication in the Official Reports.

The People of the State of New York, Respondent,

v

Ryan Oldorff, Appellant.

Decided and Entered:April 2, 2026

CR-23-1909

Calendar Date: February 17, 2026

Before: Aarons, J.P., Pritzker, Reynolds Fitzgerald, Fisher And Mackey, JJ.

Adam G. Parisi, Schenectady, for appellant.

Christopher Luhr, District Attorney, Howes Cave (Karen Fisher McGee of New York Prosecutors Training Institute, Inc., Albany, of counsel), for respondent.

[*1]

Reynolds Fitzgerald, J.

Appeal from a judgment of the County Court of Schoharie County (Ryan McAllister, J.), rendered September 6, 2023, convicting defendant upon his plea of guilty of the crime of manslaughter in the first degree.

Defendant was indicted for murder in the second degree and manslaughter in the first degree stemming from an incident in July 2019 during which he shot and killed his father. Defendant was initially remanded to an adolescent psychiatric unit at Ellis Hospital and, in August 2019, underwent a psychiatric evaluation (see CPL art 730). As part of the evaluation, two psychologists reported that defendant had been diagnosed with a plethora of mental health conditions including fetal alcohol syndrome, Attention Deficit/Hyperactivity Disorder, pervasive developmental disorder, mood disorder, reactive attachment disorder, intermittent explosive disorder and moderate intellectual disability. One of the psychologists administered a reading test showing that defendant was then reading at a first-grade level and further noted that his "[i]nsight and judgment are clearly poor." On the basis of these evaluations, it was determined that defendant's "cognitive limitations associated with moderate developmental disability substantially impair his capacity to have a rational understanding of the proceedings against him and to properly assist counsel with the preparation of his defense. . . . In light of his documented cognitive impairments and oral communication skills he is able to learn concrete factual information but does not appear able to integrate that information and apply it in a reasoned manner to assist his attorney in developing his own defense." Thereafter, defendant was committed to an intensive treatment unit at Sunmount Developmental Disabilities Office. There he attended court procedure classes in order to gain knowledge regarding criminal proceedings. In December 2020, defendant underwent a second psychiatric evaluation and, as a result, a retention hearing was held in February 2021. While the psychologist stated that defendant obtained the average score of an intellectually disabled individual who is competent to stand trial and had gained some knowledge regarding criminal court proceedings, she testified that defendant "did not have an idea of how he might be defended against the charges," was "unsure of some of the roles of court personnel," was unsure "how his attorney wanted to proceed" and "had a rather simplistic understanding of some of those things." She opined that defendant "was not ready to stand trial [and that] he was not competent to stand trial." In February 2022, defendant was evaluated a third time and was determined to be mentally competent to stand trial.

In June 2022, defendant pleaded guilty in County Court (Bartlett III, J.) to manslaughter in the first degree. Subsequently, Supreme Court (P. Lynch, J.) granted defendant's motion to vacate his plea. No additional competency examinations were requested or administered, [*2]and, in June 2023, defendant entered an Alford plea to manslaughter in the first degree.FN1 County Court (McAllister, J.) accepted defendant's plea, finding it knowing, voluntary and intelligent, and thereafter sentenced defendant to a prison term of 20 years, to be followed by five years of postrelease supervision. Defendant appeals.

Defendant argues that his guilty plea was not knowing, voluntary and intelligent because his intellectual and developmental disabilities rendered him incapable of understanding the proceedings. Defendant's challenge on appeal, however, is unpreserved because defendant did not move to withdraw his plea or otherwise raise the issue before County Court (see People v Myers, 244 AD3d 1412, 1413 [3d Dept 2025]; People v Bailey, 232 AD3d 1031, 1033 [3d Dept 2024], lv denied 43 NY3d 929 [2025]). As such, defendant contends that certain statements which he made during the plea colloquy triggered the narrow exception to the preservation requirement. Upon consideration, we are persuaded that his statements call into question whether his plea was knowing, intelligent and voluntary so as to generate this narrow exception to the preservation requirement.

"When a defendant opts to plead guilty, he or she must waive certain constitutional rights — the privilege against self-incrimination and the rights to a jury trial and to be confronted by witnesses. While there is no mandatory catechism required of a pleading defendant, there must be an affirmative showing on the record that the defendant waived his or her constitutional rights" (People v Holmes, 162 AD3d 1117, 1118 [3d Dept 2018] [internal quotation marks, brackets and citations omitted]; accord People v Simon, 166 AD3d 1075, 1076-1077 [3d Dept 2018]). "People with intellectual disabilities possess diminished capacities to understand and process information, to communicate, to abstract from mistakes and learn from experience, to engage in logical reasoning, to control impulses, and to understand the reactions of others. . . . These traits render people with intellectual disabilities uniquely vulnerable to injustice within criminal proceedings. . . . [Therefore], a court must account for [a defendant's] diminished mental capacity in ensuring that any waiver of constitutional rights is knowing, intelligent and voluntary" (People v Patillo, 185 AD3d 46, 47-48 [1st Dept 2020] [internal quotation marks and citations omitted]).

As defendant was twice determined to be incompetent to stand trial and had received four years of treatment before he was deemed competent to participate in his defense, County Court was aware of defendant's intellectual disabilities. Notwithstanding the determination that defendant was competent to stand trial, the third psychiatric evaluation report cast serious doubts on defendant's ability to enter a knowing and voluntary plea. The report indicates that on defendant's most recent cognitive assessment he "achieved a [f]ull-[s]cale IQ of 59, indicative of [*3]abilities consistent with a [m]ild [i]ntellectual [d]isability." Additionally, he "achieved an [a]daptive [b]ehavior [c]omposite of 68, consistent with [the] upper end of the 'low' range of daily living skills." The psychologist further noted that defendant was "rather immature in his understanding of the severity of his charges and the chances that he could have significant consequences — such as jail time." More importantly, during the evaluation, defendant repeatedly alleged that his counsel had reassured him that he will not be going to jail and, in fact, "express[ed] strongly held beliefs that he will not be sent to jail due to his personal circumstances of having a disability and being young when the offenses were allegedly committed. These beliefs are likely related to his relative youth and mental health difficulties, several of which make it difficult for [defendant] to relate to others successfully, accept social norms and expectations, or respect interpersonal boundaries. These beliefs are unlikely to change with additional education or training."

Under these circumstances, "[a] more probing inquiry was warranted here to ensure that defendant understood the constitutional rights he was waiving, given his significant intellectual disability" (People v Patillo, 185 AD3d at 49). As there is no affirmative showing on the record that defendant understood and voluntarily waived his constitutional rights when he entered his guilty plea, the judgment of County Court convicting defendant of manslaughter in the first degree and sentencing defendant thereon should be reversed, the plea vacated and the matter remitted for further proceedings (see id. at 50; People v Simon, 166 AD3d at 1077; People v Holmes, 162 AD3d at 1118). Considering our disposition, we need not address defendant's remaining contentions.

Aarons, J.P., Pritzker, Fisher and Mackey, JJ., concur.

ORDERED that the judgment is reversed, on the law, and matter remitted to the County Court of Schoharie County for further proceedings not inconsistent with this Court's decision.

Footnotes

Footnote 1: An Alford plea, also known as a best-interests plea, involves an admission of guilt by a defendant to a lesser criminal charge, while simultaneously expressing his or her innocence. In essence, the defendant admits that the prosecutor has enough evidence to convict him or her of a more serious crime, while at the same time pleading to a lesser charge, thereby avoiding a possible worse sentence if convicted of the more serious crime.